Gregory v. Miami-Dade County and Officer Perez. Good morning, Your Honors. May it please the Court. My name is Martin Leach. I'm here on behalf of the estate of Sebastian Gregory and of his parents. This is a case about a 15-year-old boy, Memorial Day weekend, 2012, walking within five blocks of his suburban home in the Kendall area at approximately 2.30 in the morning. Jurors in this case would know that the Kendall area is a residential area with suburbs, families, not a high-crime area. In fact, Officer Perez testified that in working in that particular area, at that time of the morning, typically the only type of crimes he observed or that he had to deal with was curfew. There is a curfew in Dade County, and anybody under 18 is subject to that curfew. It's different on a weekday as opposed to a holiday weekend, which this was. So in this particular case, we have a curfew issue with respect to the boy involved in this case. He was out 2.30 in the morning. He'd been with his dad earlier in the day. Again, it was a holiday weekend, Memorial Day. They'd been out fishing. They got home 2.30 in the morning. He's restless, can't sleep, gets up, decides to walk around the neighborhood. Within five blocks, as I said, of his home is where this incident happened. He was dressed in a baggy sweater, t-shirt, long pants, and a cap. He had a t-ball bat, which he had inserted into the pocket of his pants with the sweater over it in order to conceal it. I think we know all the facts. Let's get right down to the key question seems to be when he's laying prone on the ground and the officer's pointing a gun at him, he moved his hands toward his back that the officer believed was a gun, and that's when he started shooting. I gather initially, the district court denied summary judgment to Officer Perez, right? Because he thought that was a genuine issue and material fact, but then he sees this video by the Columbia TV station that had been broadcast a month before and said, oh, wait, he was pointing and showing that he was really reaching for his bat, and then he granted summary judgment to Officer Perez. Now, what do you say about that? Yes. The videotape in the news story, the Columbia news story, was filed with the court. I hope that the court's had an opportunity to take a look at the tape. I think we have. You can see in the tape, the boy demonstrated what happened. He demonstrated getting on the ground, putting his hands up over his head, and then the shot's fired. If you look at what the narrator of the report says, the narrator before this incident where they claim that he's then reaching for the bat in the video, he says once he was on the ground, Sebastian says that he made a movement to slide the bat that he had in his pants to one side because it was making him uncomfortable. There's nothing about reaching with his hands or whatever. That's completely consistent with him saying, I wobbled my leg or moved my leg or whatever in order to move the bat out of the position that it was in so that he could become more comfortable. But that's what he says. That's what Mr. Sebastian says. He says he had his hands, they were all the time up away from his body. There's circumstantial evidence that he's lying face down with his hands up. He demonstrated it in the video in the news story, so it's right there. You can see it. If he was going to demonstrate that he reached for it at that critical moment, why wouldn't he have done that when they're doing an actual demonstration on the street where it happened? In another part of the video, he says, yeah, I did try to move my bat, but when he does that, he brings his hands here. The question is, was he just pointing to where on his body he moved or whether he was talking about his hands? Your argument is it's a fact issue. The jury should look at the video, see what he's saying. That is correct. All he was saying at that time on the video is I had, here's where my bat was. Not that he moved his hands down and did anything. That's part of the case. In a nutshell. It all boils down to what, twenty seconds of the video? I noticed in the amended ordered, the district judge says it's all between 8.35 and 8.55 on the video. The video, yeah. Where in the video it has that. It's a long news story. It's about police shootings in the United States for Columbian TV. It wasn't just about this. We understand that segment where he's talking about the bat is distinct from where he's talking about how he was that night, too. That is correct. Your argument is look at the video. The district court was wrong in how he viewed it. There's several reasonable ways to view it. They should decide the case. That's for a jury to decide. I think that we can all agree that if his hands are up and away from his body at all times material, that he's not an immediate threat and therefore there's no reason to shoot him. Under the Graham case, we first look at what crime he had committed. The officer testified anyway that he moved his hands down. Forget about the video. The officer's testimony is different than your client. That's correct. It's definitely a... Which is why summary judgment was denied to begin with. Correct. Yes. The officer's testimony. But if you take a look at the officer's testimony, if I could go through a couple of things about his testimony because if you read the answer brief, there's two words in there that are used more often than any others, handgun and gun. In this case, it's not even undisputed that the officer in his mind believed that he was in possession of a firearm. I'm going to tell you why. There's a number of factors that lead to that conclusion. First, as the court's aware... Before you get to that, the question is not whether or not this officer subjectively knew but what a reasonable officer in that position might have believed, right? Correct, but it's a reasonable officer with the knowledge that this officer had at that time. He understood but it's not his purely subjective understanding. Absolutely not because subjectively he's going to say what he says and then we have to accept what he says. But objectively, if you take a look at looking at what he knew objectively and then looking at what a reasonable officer would do, the first thing is this particular officer arrested Sebastian a month before for the exact same thing. He claims he observed a bulge in the right hip area. He arrested him and observed that it was in fact a T-ball bat just like the one in this particular occasion. So the first thing I would say is the officer knew when he observed Sebastian because he says that after he came up behind him and then finally Sebastian stopped and looked around. And the reason Sebastian didn't hear him is because he had an iPad and he was listening to music. So when he finally turned around, Officer Perez testified, I recognize that guy. That's the guy that I arrested a month ago who had a concealed weapon. He had a T-ball bat in his pants. I observed a bulge. Same thing here. I observed a bulge in the exact same place. So a reasonable jury could conclude, well, Officer Perez obviously knew that he had a T-ball bat on him just like he had a month before when you arrested him. Officer Perez also knew that, because again, the bulge was in the same place. He knew he was a minor. He knew he was 15 years old. He knew that he could not legally possess a firearm because, you know, under 18 in Florida you cannot possess a firearm. There's a law to that effect in the state of Florida. And furthermore, if he thought he had a gun on him, there are police procedures that are required to be followed. You get this guy on the ground. He puts his hands over his head. Instead of immediately going and cuffing somebody who you now tell us you believed had a gun on him, you instead look away and get on your walkie-talkie or your radio system or whatever. That is not consistent with proper police procedure. A reasonable jury could look at all of these factors and say, this officer knew he didn't have a gun on him and saw him move slightly and just overreacted and unloaded his gun on him. Again, this is applying the Graham test. We have somebody who's not fleeing. He's not trying to get away. He's on the ground with his hands up. Is this correct? He did have a T-ball bat the prior arrest, but he also had two knives. Correct. Is that okay? And he had also had an open warrant for failure to appear in court in a prior concealed weapons charge. That was the month before. The month before. Yes. When he was stopped then, he had an open warrant for another time. Again, these are for- We're just going to what an officer would know, and then we'll get to what a reasonable officer would do. Right. I'm just trying to make sure we have the whole story here because it seems to me this comes down to the video. That's really what it is. He either moved his hands or he didn't. If he moved his hands and tried to come down to there, you're saying even if he did that, you don't concede he did, there was still a question about what a reasonable officer could think here. That's correct. I'm getting you to say he had two knives previously. Yes. This officer knew that. He also knew he had a prior arrest for a concealed weapon. Correct. Again- I don't know what that weapon was. The record doesn't tell us. He has a prior arrest. It didn't show up. He even had a warrant on it. Let me focus then on another fact, which is undisputed in this record. The officer was approximately seven feet away. The only type of a weapon from that distance that the officer could use, could be fearful of for his life imminently, would be a gun, which is why the officer conveniently said that he feared that he had a gun. For the video, the district court agreed with you that it was an issue of fact as to the hands are here, whatever he has, he doesn't move. We don't even have to worry about what somebody would reasonably think the bulge is if the hands don't move. Yes. Judge Graham did seem to focus very much on a belief that the officer could reasonably believe it's a gun. I've always had a problem with that because I believe, given all the factors I've just described, that a reasonable jury could find that he wasn't even concerned that he had a gun because of all the things that I've just gone through. Again, there was police procedure testimony from every other officer on the scene. They said, yes, if you come to a scene and you think somebody has a gun, you immediately need to subdue the subject and get the weapon so you're not in fear for your life. In this case, Officer Prez did not do that. Again, if I could make another point, because a lot of the cases deal with split second things and everything happens like you open a door and there's somebody there, as recently happened in the Scott case where there was the denial of rehearing in bank. But in this case, this is not something that just happened all of a sudden. This was over a 30, 45, maybe even more than a minute period of time when the officer first observes the suspect, claims that from the first time he saw him he saw the bulge, and then follows him. This is not something that just rapidly accelerated over a very brief period of time. I'm trying to help you, but if he never moved his hands, it doesn't matter. I agree. Okay. You've reserved your time for a vote. I promise you we got it. Thank you, Your Honor. All right. You want to keep your time so you can respond to that. Thank you. Please, the court. Assistant County Attorney Ezra Greenberg on behalf of the appellees sitting at council table with me is Assistant County Attorney Bernard Pastore. I want to first hit the issue that the officer does have a reasonable belief that he's carrying a concealed firearm, because if we don't have that, obviously, there's nothing here. So I think it's very important to hone in on that, and then I'm going to go to the movement that Gregory is making that gives the officer a reasonable belief. Well, with all due respect, he could have a reasonable belief he's got a firearm in his pants. If he's like this, then I don't think he gets to shoot him nine times in the back. I agree with Your Honor. It's not about the reason. I promise you. I'm, of course, just speaking for myself. Okay. Well. It's about whether he moved the hand. So focus on that. Okay. You can't go back to arguing about whether you reasonably believe the bulge was a gun, not a gun. He says it's a metallic object, blah, blah, blah. Sure. Absolutely. We do this all the time. Right. Absolutely, Your Honor. It's always a bulge, and it's always a gun. And they admit there was a bulge. They admit something was there. Right. And also, importantly, Your Honor. And that he had two knives the week before, a month before. And importantly here, Your Honor, the forensic evidence confirms that at least two inches of that bat was not covered by Gregory's clothing, which means that the officer could have seen about a two-inch tiny portion. Well, now let's go to the video. Okay. Did he or did not, did he not move the hands or is it better stated? There's clear, you would admit, before the video, there's a disputed issue of fact as to whether he moved his hands at all based on the plaintiff's deposition or the testimony. Well, I don't concede that it raises a genuine factual dispute because, you know, I appealed the district court's first denial of summary judgment. Right. And I'm going to address that. But first, I'll focus in on the video, okay? Right. The plaintiffs are claiming, well, that's not a hand demonstration. First of all, the declaration that claims that is not admissible because it is not subject to cross-examination because the plaintiff cannot testify at trial. Second of all, the plaintiff earlier in that video points. You see him pointing. He goes, I was carrying the bat. And he shows the interviewer exactly where the bat was. He doesn't say, I moved my hands when I was lying prostrate. Right. He says, I moved to adjust the bat. Then a month later... And it's clear to me, looking at the video, I'm not going to be a juror on this case, that he's just telling you where the bat is, not what he did while he was lying prostrate. That is a reasonable inference from the video. If that's how Your Honor reads the video, then I'm not going to persuade Your Honor on that argument. And I would ask Your Honor... You need to persuade one of them or both of them. Because I've looked at the video five times. Well, I think you also can't ignore what he's saying, which is, I tried to move the bat. And the plaintiffs don't... But you can move the bat. I mean, you've got to look at the evidence in the light most favorable to him at summary judgment, right? And having looked at the video, too, he could have tried to move the bat without moving his hands. Well, Your Honor, but you have to look at it in the light most favorable to him to the extent that it is consistent with the physical evidence. And I think at that point... Well, no, to the extent that it is not inconsistent with the physical evidence. Sure. To the extent that it's not inconsistent. And the panel decision in Johnson, which Your Honor was on, goes through that, that you cannot give a version of events that's inconsistent with the physical evidence to defeat a motion for summary judgment. Now... What's inconsistent here with the physical evidence? If you have something in your pocket that's two feet long, you may be able to... And you're lying on your stomach. Why aren't you able to shift your body or your hips in a way to try to make the bat lie in a less uncomfortable position? I thank Your Honor for that question, and the answer is he's not lying on his stomach. There is a shot that is illustrated in the photographs and explained by the forensic medical examiner. She explains that this shot is coming from right to left and upwards. Now, initially, based on the ballistics, he is facing like this, with the bat away from the officer. Your honors are where the officer is, okay? The shot that Dr. Lu describes comes like this, from right to left and upwards. Now, the only testimony that can explain... Where are the other eight shots? Well... He was shot nine times, right? No, he was... He was hit six times. Nine shots were five. Okay, where are the other six shots? Where do they enter the body? Right, three come... I believe it's three come right to left, two come left to right. I'm not left to right. Where do they enter the body? They all enter in the center area, but they're going side to side through the body. That's very important because it shows that his body is rolling back and forth. But it could roll once he gets hit. Not towards the officer, Your Honor. She is opining... Then how could... She is opining... If you have shots going in both sides of the body, he had to roll one way or another at some point in time. But you see, Your Honor... Am I missing something? Yes. Your Honor is missing the fact that the body position he claims he's in, right? Lying parallel to the street. All the shots would have gone down to up. He might not have been lying down in the direction that he said, but why is it physically impossible for him to have been lying on his stomach? Right, because if he... If you're like this, you can be on your stomach, and he might be wrong about being here like this, but he could be right about being on his stomach and being here like this, and that could change the trajectory of the bullets, could it not? Well, it couldn't flip him towards the officer, which is what she's opining. The only testimony that can explain that shot is Officer Perez's testimony that he rolls towards him like this, exposing the right side and allowing the bullet to go right to left and in an upwards trajectory. The argument that the bullets can cause him to roll like that is pure rank speculation. How could he have been hit on both sides if he didn't roll? Right, he did roll, but he rolled towards the officer. It depends on which shots hit him first. No, because Your Honor is assuming that the shots are causing him to roll. No, I'm not assuming that. I'm suggesting that a reasonable juror could find that. People move most of the time unless they're hit in the head. When they're shot and non-fatally shot, people tend to move, whether they drop, whether they roll, whether they assume a defensive position. People don't stand still when they're shot by a firearm at this sort of a distance. With respect to Your Honor, I'm not sure how a reasonable jury could find that when the unrebutted expert testimony is that the shots are inconsistent with the position that the plaintiff claims that he's in and are only consistent with Officer Perez's testimony that he has rolled toward him. How could the shots shooting him cause him to roll towards the officer? They simply could not have. But you're suggesting that it has to be the shot that makes him move, and given that he wasn't killed at that point in time, why couldn't he have reacted by rolling and trying to protect himself? I'm saying that the roll begins before the shot occurs. You're saying that? Well, I'm saying that because that's the expert's opinion. I'm not sure that that needs to be accepted on this record at summary judgment. You may well be right that that's exactly the way things played out. But it's uncontroverted ballistics evidence as to what is physically possible. It is uncontroverted evidence. I only speak for myself. If you had him being shot all on one side of the body, I could see your argument, and I think your argument would be a very strong one. But if he's being hit on both sides of his body, at some point he moved. At some point he shifted. Unless the officer rolled around and shot him here and then shot him there. No, but the argument, Your Honor, is the officer claims that he is rolling back and forth towards the officer before he's shot. That's what causes the bullets to go in on both sides. But that's not what the plaintiff says. I understand that, Your Honor, but the plaintiff's testimony is inconsistent with the ballistics. If he's rolling around and hasn't moved his hands, can the officer shoot him? It depends on the roll. In this case, I think he could. Because? Because the officer could perceive that as an ambush and as a threat. No, no, only if he moved his hands. Well, Your Honor, how can you roll your entire body without moving your hands? Well, as long as the hands are up here, as opposed to reaching for what the officer says he thought was a gun, you could be rolling 360 degrees as long as you keep your hands away from your hips. Well, with respect—  Well, when someone is holding a firearm, this court has held otherwise, and that's the Jean-Baptiste case. But this guy was not holding a firearm in his hand. That's undisputed. Right, but that was the facts in Jean-Baptiste, and the court says he doesn't have to be holding a firearm in his hand because it's available for immediate use. The fact that the firearm is holstered, which is the facts in Jean-Baptiste, it takes one second to unholster that and shoot him. I know, but that can't be the standard because if that were the case, everybody who's armed can be shot. Not armed. It's someone who is armed with a firearm and not compliant with the police, Your Honor. That is a very different circumstance, and it's not everyone. It's the aggravating— What did he do here to not be compliant under his view of the evidence? Right, well, he is making a— No, under his view of the evidence. What did he do to not comply? Right, well, under his view, he is trying to move the very object that the officer believes is threatening his life, and this is where the circumstances of the encounter matter so much. The plaintiff admitted the factual assertions that we made in our statement of material facts, that this was an area that had a string of burglaries, that Officer Perez had stopped juveniles carrying concealed weapons, that the plaintiff was wearing clothes consistent with criminal activity. He's wearing double layers, black, on a hot May night. That the officer knew this specific individual had a history that included myriad weapons crimes and aggravated battery. But he had never been convicted of anything. Right, but when an officer views someone's criminal history on a records check and all those things come up, do you think the officer says, he's probably not dangerous because he's never been convicted? We're taking this from the perspective of a reasonable officer. The reasonable officer does a records check, sees a dozen arrests, all for weapons and violence charges, and sees a registered criminal gang member. During this encounter that night, the individual doesn't respond to the fact that the police car pulls up behind him. He doesn't respond to the officer's commands to show his hands. As you heard, he was listening to his iPad. The plaintiff didn't testify to that. He just said, I didn't hear what the officer said. So we have a plaintiff who, during the encounter, is noncompliant. We already have noncompliance during the encounter. We have an officer who thinks that he's holding a firearm. Why didn't he pat him down? He didn't have time. The moment that the plaintiff gets on the ground, the officer goes to call in what he has, and when he looks down at his radio, that's when the plaintiff makes the movement. So he could have perceived this as an ambush, just as in John Baptist. I have a question. Does the officer say, I told him to lie face down, or does the person, the plaintiff here, does his plaintiff just lie face down? They both say that. Both of them agree. He is told to assume a prone position on the ground. Okay, I just wanted to clarify. Yeah, and at that— He was compliant to that extent. He did immediately hit the ground. Yes, after several— Put his hands up. Correct, Your Honor. After several instances— I have another question. On the medical exam, the medical examiner makes no findings, doesn't say anything about the placement of hands, as I understand it. There's nothing about hands, right? That's correct, Your Honor. Okay, and the medical examiner doesn't have anything about— he's not shot in the hands or even in his arms, right? There's no bullet in the arms anywhere. Is that correct? Right, and the officer doesn't testify that he's trying to shoot his hands either. I know, but if your hands are down and you're— I don't know. The more I know, the less I know. I'm just trying to make sure there are no bullet entry wounds or scrapings or anything in the arms. No, but he does have a bullet straight through the part of the bat that she claims is visible, the two inches that she claims is visible. It could have become visible after he laid on the ground as opposed to visible when the officer says he saw it. Well, there's no record evidence disputing that the officer's headlights illuminated. Now, you rely a lot on this John Baptiste case, right? Yes. Wasn't the suspect there committed an armed robbery, engaged in a high-speed chase with the police, crashed his car, was running through the neighborhoods, and had a gun on him? Right, well— I mean, you really think that's comparable to the facts here? Well, I have two responses to that, Your Honor. The first is, given all the aggravating information that this officer specifically knew about this individual, that he had stopped him the month before with weapons, that he knew it was a criminal gang member, that there was noncompliance during the encounter, and that he thought he was carrying a firearm, I do think there are sufficient— But there was a lot more conduct in John Baptiste, right, than there was conduct here that would give the officer grounds to start shooting. Right, but, Your Honor, when an officer believes someone is carrying a firearm, this is 3.30 in the morning. He is not stopping someone wearing a Boy Scout uniform coming out of Sunday morning church. He's stopping someone wearing all black at 3.30 in the morning, who he knows to be a violent criminal gang member. That's what this officer knows about him. And my second response to that is, remember, we need clearly established law in this area. Most of the cases that the plaintiffs cite involve cases where the court has said the weapon was put down, the knife was put down, the individual had their hands up. He doesn't cite a case where the court found that the individual had a gun available for use and made a sudden movement. That case is John Baptiste. Gilmour v. City of Atlanta, en banc from the middle 1980s. I think that in Gilmour, the testimony— There was a fight between the police officers and the defendants. They struggled for the police officer's gun. And at a point, even though that had happened, at a point in time when the person was, I guess, less of a danger, the police officer fired, and we said, no summary judgment. That's an en banc decision from 1985. I think that the facts, by the time the shooting occurs in Gilmour, the plaintiff is completely unarmed, based on my recollection of the case. By the time the shooting occurs, he had been unarmed at that point. He was always unarmed, but he was going for a gun. My recollection of the case is that the use of force in that case is not in response to someone who is believed to be holding a gun. No, he wasn't holding a gun. He was going for a gun. Well, I don't see how Your Honor squares that with John Baptiste. Well, I don't have to square it because Gilmour is an en banc decision. So if there's a conflict between the two, Gilmour controls. Right, but for purposes of clearly established law, you're saying that the officer should have known not to follow a 2010 decision? No, what I'm saying is that qualified immunity is an artificial construct. Courts have come up with it as a way of trying to manage 1983 litigation, and it's all a fiction because we all know that no police officer goes to Westlaw at 12 midnight every night to see what the 11th Circuit has decided on excessive force cases so that he knows, oh my God, they decided John Baptiste yesterday. So if I have a case like John Baptiste, I can use deadly force. And then the next day in check and see, ooh, the 11th Circuit limited John Baptiste. Got to be careful. If the facts are like this, I can do it. If the facts are like that, I can't do it. It's an artificial construct, and whether it's fair or not, it provides some modicum of protection to a reasonable officer, but it assumes that they're completely knowledgeable about existing law. That's just the way it goes. I understand that, Your Honor, and I think that when you look at the recent cases from the Supreme Court and this court and the level of particularity that you need for clearly established law, I really don't think that Gilmour does it, especially in light of the fact that we have John Baptiste, and as the Supreme Court recently said in the, I think it was the Molyneux case, and this court has said as well, when you have a case that lies between two different controlling cases, that's not clearly established. But you'll concede that his hands never move, and he's like this, and that there's enough evidence to create a factual issue. I know you say it isn't. You say the rolling says, you say the medical exam contradicts the hands. You say the video contradicts the hands. It's implausible this officer did this if he was just like that. But if there's enough evidence for jury to say he's just like that, you'll have to admit that the law is clearly established, you can't shoot them. I'm just curious whether you'll even concede that. Well, even the plaintiff's consent. My hypothetical is he's prone in his hands out there, and he doesn't move his hands. Can an officer shoot them? Depends what the rest of his body is doing. If he's beginning a role that the officer believes could lead to accessing the gun. That's not my hypothetical. My hypothetical is under his version of events, there's not all this big role from the medical examiner. Can an officer shoot them? Under his version of events, I believe yes, because he has said that he is trying to move the very object that the officer is threatening. Even if he moves the torso a little bit trying to get the bat not to be right under him, an officer can shoot. Under the arguable problem. Your time has expired, but you've been answering the court's questions, which we appreciate. Thank you, Your Honor. All right. I actually should have done this to begin with. I have a concern. I think we need to affirm on the city of Miami, because they can't be liable if it's wanton and willful conduct, and to prevail on your 1983 claim, it's almost got to be wanton and willful conduct. It's worse than wanton and willful conduct. This was dismissed on the pleadings. This is a claim against Miami-Dade County, not the city. But you allege he intentionally shot him without any basis to do so. Why is that not wanton and willful conduct to give the city immunity? Rule 8D2 allows us to plead in the alternative. This was dismissed by Judge Graham at the pleading stage. We were never able to even do any discovery with regard to the county. I take your allegations and your complaint and dismiss it at the pleading stage. Okay. We did plead factually distinctly with respect to, and one we said that he purposefully shot him, and the other one we said that he overreacted under the circumstances based upon the fact that he was looking down and wasn't paying attention, and then suddenly he just shot. So if that's the scenario, if the jury agrees that that's what happened, that he basically was not following proper police procedure, which is you get him in a subdued position and then you cuff him immediately. I think they're wholly inconsistent, but anyway. Aren't the state law claims intentional torts? Yes. And under 76828, which is the Florida statute, where you can sue municipalities or governmental entities, it has a provision in Subjection 9A that allows you to plead in the alternative if the officer acts maliciously, wantonly, and with a criminal. There's a phraseology that's used in the statute, but basically that would have to be, this guy beat me up in high school and I'm going to shoot him dead. It's got to be something malicious. In this case, I'm not sure. I could see where a jury could find he's acting maliciously, but I think more likely, honestly, that the jury's going to find that there's a constitutional violation, but that he didn't act with malice in shooting Sebastian. Instead, he was acting with not following proper police procedure. Your whole theory is it was just totally reckless in disregard of human life because your client's hands were up and he started shooting him. Yes, that is the essential fact. That's so the county may not be liable. Okay, go ahead with your main argument. Now, go back to the Philly consortium claim. I don't see any basis for that either. Well, there's a third district, which is under a state statute, and the third district, which is the district that includes Miami, has a specific case that says the statute in question talks about negligence claims, but they said a negligence claim would include an intentional act such as this. I mean, it's in the third district case. I could cite the case to you. If you give me a moment, I can find it. It is the statute 716.041 . . . Well, it's the city of Poynton Beach Weiss case. That's what it is. Yeah, well, there's a Honeywell case, which I'm looking for right now. Is it in your brief? Yes, it is in my brief. I do cite it in my brief with respect to that, but I do want to say with regard to the county, the Florida Supreme Court has specifically held that you're allowed to plead in the alternative in these types of cases, and it's for the jury, under most circumstances, for the jury to decide the malicious intent or not of the officer. I mean, the Florida Supreme Court has held that. It was in the 1986 case of Magee v. Volusia County, and it's unmistakable. That case clearly would apply to allow us to plead alternatively and then let a jury decide, get into the head of the officer, which is what juries do, and decide whether he was acting maliciously in what he did. As a result, that needs to be reversed as well. Okay, your time's expired. Let me see if the judges have . . . For the foregoing reasons, I would respectfully request that the court reverse the summary judgment and the dismissal of Miami-Dade County. Thank you. The case is submitted. It was well-argued on both sides, and we appreciate your help with the case. Court will be in recess. Bye-bye.